**Paul V. Avelar**
AZ Bar No. 023078
INSTITUTE FOR JUSTICE
3200 N. Central Ave., Ste. 2160
Phoenix, AZ 85012-1114
Tel: (480) 557-8300
Email: pavelar@ij.org

**Michael Greenberg***
DC Bar No. 1723725
**Benjamin A. Field***
NY Bar No. 5430129;
DC Bar No. 1046902
**McCarley Maddock***
SC Bar No. 106372
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Ste. 900
Arlington, VA 22203-1854
Tel: (703) 682-9320
Email: mgreenberg@ij.org;
bfield@ij.org; mmaddock@ij.org

*Attorneys for Plaintiff Madrid*
*Motions for Admission *Pro Hac Vice*
 to be filed

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Fernando Madrid, | No. _____ |
| *Plaintiff*, | COMPLAINT |
| v. | |
| Michael Whiting, individually and in his official capacity as Apache County Attorney; Daryl Greer; Trent Jensen; Apache County, Arizona; Apache County Attorney's Office, | |
| *Defendants*. | |

1

**INTRODUCTION**

1.      This civil-rights lawsuit seeks to vindicate Plaintiff Fernando ("Fernie") Madrid's First and Fourteenth Amendment rights to be free from government suppression of, and retaliation against, his constitutionally protected expressive activity.

2.      Fernie has spent decades as an educator. He holds a master's degree in educational leadership, and he has served as a teacher, assistant principal, principal, assistant superintendent, and interim superintendent. He specialized in helping to turn around under-resourced, predominantly Native American schools.

3.      It was only fitting that the next step in his education career was to run for Superintendent of Schools in Apache County, Arizona, his home county and a county whose land contains multiple tribal reservations. Fernie first ran for that office in 2016. Although he did not win the primary election, he ran without issue.

4.      Fernie decided to run for superintendent again in 2024. He filed paperwork to begin his candidacy for the November 2024 election in late February of that year. In the primary election, his opponent would have been the incumbent superintendent, Joy Whiting. Joy Whiting is married to Michael Whiting, who was then the Apache County Attorney.

5.      Fernie's electoral challenge to Joy Whiting did not sit well with Michael Whiting. Rather than allow the race to play out at the ballot box, Michael Whiting launched a campaign of intimidation and harassment against Fernie and Fernie's family to make Fernie drop out. He used two henchmen on his County Attorney's Office payroll, Daryl Greer and Trent Jensen, in this campaign. Michael Whiting, Greer, and/or Jensen obtained

records not readily available to the public about Fernie, his family, and his property; surveilled and photographed Fernie and his home; threw rocks at Fernie's home at nighttime; physically assaulted Fernie while he was publicly collecting signatures to appear on the ballot (with one henchman declaring, "Michael Whiting is just getting started with you"); and sent to Fernie's home a mysterious, anonymous letter that threatened both legal action against Fernie and his family and the dissemination of private information about Fernie and his family to various government and media agencies if Fernie did not drop out of the race by a set deadline.

6.    The intimidation campaign succeeded, and Fernie was forced out of the race for fear of his own and his family's safety. With her competition cleared, Joy Whiting sailed to reelection as Superintendent of Schools unopposed in both the primary and general election. Michael Whiting, too, was reelected to the County Attorney post unopposed. But Michael Whiting no longer holds that office because he is no longer eligible: The State Bar suspended his law license after he was indicted for his harassment and intimidation of Fernie, among other alleged abuses of his office. The criminal case against Michael Whiting remains ongoing. One of the henchmen (Daryl Greer) has already pleaded guilty to a misdemeanor for his actions against Fernie.

7.    The democratic principles enshrined in our Constitution are meant to ensure that elections are settled at the ballot box with free and open discourse, not with harassment campaigns. Declaring one's candidacy for local office is a protected expressive act— indeed, core political speech protected by the First Amendment. When government officials suppress and retaliate against such protected speech, as the Defendants did here,

they violate the First and Fourteenth Amendments. This lawsuit seeks to hold Michael Whiting, Greer, Jensen, and Apache County accountable for violating Fernie's rights.

## JURISDICTION & VENUE

8.    This is a civil-rights action brought under the First and Fourteenth Amendments to the U.S. Constitution; the Civil Rights Act of 1871, 42 U.S.C. § 1983; and the Declaratory Judgment Act, 28 U.S.C. § 2201.

9.    This court has jurisdiction under 28 U.S.C. §§ 1331 (federal-question jurisdiction) and 1343 (civil-rights jurisdiction).

10.    Venue lies in this Court, in its Prescott Division (for which filings are made in the Phoenix Division) because, as described below, a substantial part of the events giving rise to the claims in this action occurred in Apache County, Arizona. *See* 28 U.S.C. § 1391(b)(2); L.R. Civ 5.1(a), 77.1(a).

## PARTIES

11.    Plaintiff Fernando ("Fernie") Madrid is a citizen of the United States. He was born in, grew up in, and resides in Apache County, Arizona.

12.    Defendant Michael Whiting is the former Apache County Attorney. He is sued both in his individual capacity and in his official capacity as the holder of that office during the events at issue here.

13.    Defendant Daryl Greer is a former employee of the Apache County Attorney's Office. He is sued in his individual capacity.

14.    Defendant Trent Jensen is a former employee of the Apache County Attorney's Office. He is sued in his individual capacity.

15.     Defendant Apache County is a body politic and corporate located in the State of Arizona.

16.     Defendant Apache County Attorney's Office is a department of Apache County, the latter of which is a body politic and corporate located in the State of Arizona.

FACTS

**A. Michael Whiting, Daryl Greer, Trent Jensen, and the Apache County Attorney's Office**

17.     The Apache County Attorney is an elected officer of Apache County. The County Attorney "is the public prosecutor of the county" and has various duties defined by statute. A.R.S. § 11-532.

18.     The Apache County Attorney maintains an office with a staff of deputy attorneys and administrative staff.

19.     The Apache County Attorney is the policymaker for Apache County on issues concerning the County Attorney's Office, its staff, and its law-enforcement activities.

20.     Michael Whiting first joined the Apache County Attorney's office as a deputy county attorney in 2006. In 2008, he challenged the incumbent County Attorney and won.

21.     He took office as County Attorney after that election and remained in that position until 2024. He was reelected in 2012, 2016, and 2020; he ran unopposed each time.

22.     By 2024, the Apache County Attorney's Office run by Michael Whiting employed three deputy county attorneys.

23.    Also by 2024, Daryl Greer and Trent Jensen were both employees of the Apache County Attorney's Office.

24.    Greer held the title of "lead investigator."

25.    Yet Greer had no certification from the Arizona Peace Officer Standards and Training Board, no law-enforcement training, and no law-enforcement experience, all of which one would typically expect someone performing investigative duties for a law-enforcement agency to possess.

26.    Jensen held the title of "legal assistant."

27.    Yet Jensen did not assist with the typical responsibilities of a legal assistant and, on information and belief, did not have the training typically associated with a legal assistant.

28.    Indeed, on information and belief, when employees of the Apache County Attorney's Office other than Michael Whiting, Greer, and Jensen were interviewed by the Arizona Attorney General's Office in June 2024, no one could identify the duties or responsibilities Greer or Jensen fulfilled for the County Attorney's Office for which they were employed.

29.    Both Greer and Jensen took orders and assignments concerning their employment with the Apache County Attorney's Office directly from Michael Whiting.

**B. Fernie Madrid**

30.    Fernie is 66 years old. He was born and spent much of his childhood in and around St. Johns, Arizona, the county seat of Apache County.

31.    For generations, many branches of Fernie's family have lived in the St. Johns area. Today, much of Fernie's family lives in either St. Johns or the Phoenix metropolitan area, or both. The two areas are just a few hours' driving distance apart.

32.    Fernie's elderly father fits that mold: He lives in the Phoenix area during the colder months and in St. Johns during the warmer months. Much of Fernie's family chips in to help take care of Fernie's father, including Fernie.

33.    Fernie likewise splits his time between the Phoenix area (specifically, in Laveen) and St. Johns. But he considers St. Johns his principal home and residence. He is registered to vote in St. Johns, for example, and has been for as long as he can remember.

34.    Fernie's family has a long history of public service. For many years, Fernie's father worked for the Arizona Department of Transportation. Earlier in life, Fernie served in the Army Reserve before receiving an honorable discharge. And all of Fernie's immediate family members, including Fernie himself, have worked in education for long periods.

35.    Fernie started his education career as a middle-school science teacher.

36.    Throughout his career, Fernie served as an assistant principal, principal, assistant superintendent, and interim superintendent. He also holds a master's degree in educational leadership.

37.    About 75% of Fernie's education career took place in Apache County schools.

38.    Apache County is situated in Arizona's northeast corner. It has the most land designated as Indian reservation of any county in the United States.

39.    Over his time as an educator, Fernie developed a specialty in helping to turn around underserved predominantly Native American schools.

40.    Today, Fernie is mostly retired from education work. But he remains passionate about education and student success, and he maintains his teaching credentials and occasionally substitute teaches.

41.    Before that, Fernie sought to use his decades of educational-leadership experience by seeking election as the Apache County Superintendent of Schools.

42.    In 2016, Fernie ran for Apache County Superintendent of Schools for the first time. He garnered nearly 40 percent of the vote in a contested primary election.

43.    Fernie decided to seek election as school superintendent once again in 2024, but this soon triggered Michael Whiting's intimidation campaign.

**C. Fernie begins to seek election as Superintendent of Schools in 2024.**

44.    After his unsuccessful run for Superintendent of Schools in 2016, Fernie decided to run again in 2024.

45.    Before publicly launching his campaign in 2024, Fernie spent substantial time formulating his platform, coming up with a campaign social-media plan, and generating commitments from stakeholders to support him.

46.    Succeeding in the 2024 election would require Fernie to defeat the incumbent, Joy Whiting.

47.    Joy Whiting was first elected Apache County Superintendent of Schools in 2020. She ran unopposed in both the primary and general elections.

48.    Joy Whiting is married to Michael Whiting.

8

49. Both Fernie (and Fernie's family) and the Whitings call the small town of St. Johns home, so Fernie was long familiar with the Whitings.

50. Before 2024, Fernie had never had a problem with either Joy Whiting or Michael Whiting.

51. In fact, Fernie actively supported Michael Whiting's initial campaign for County Attorney in 2008.

52. Candidates for a primary election must file a nomination petition 120 to 150 days before the primary election. The nomination petition must be supported by a number of qualified signers set by statute. A.R.S. §§ 16-311(a), 16-322.

53. And before obtaining signatures on a nomination petition, the would-be candidate must file a "statement of interest." A.R.S. § 16-311(H).

54. Fernie filed his statement of interest to appear on the Democratic primary ballot for the 2024 election for Apache County Superintendent of Schools. It was marked as received by the Apache County Elections Department on February 26, 2024.

55. Fernie's statement of interest complied with every requirement in section 16-311(H).

56. Over the next few weeks, Fernie worked toward obtaining the number of signatures required under section 16-322. He drove all over Apache County to appear in public spaces around the county, where he alerted people to his candidacy and solicited signatures.

57. The initial reception to his campaign was strong. Within a few weeks, he had garnered the required number of signatures to support a valid nomination petition.

58.   He continued seeking additional signatures around the County, both in an abundance of caution in case any signatures were challenged and to build support with voters for his campaign.

**D. Michael Whiting's intimidation and harassment campaign forces Fernie out of the race.**

59.   Sometime after Fernie filed his statement of interest with the Apache County Elections Department, Michael Whiting learned of Fernie's filing and his candidacy to challenge Michael Whiting's wife for Superintendent of Schools.

60.   Michael Whiting concocted a scheme intending to intimidate, harass, and retaliate against Fernie so that Fernie would end his campaign.

61.   Michael Whiting's intimidation and harassment tactics against Fernie played out in several acts. Several were executed by Greer and Jensen—employees of the Apache County Attorney's Office—at Michael Whiting's direction.

62.   First, on or around March 7, 2024, Michael Whiting personally submitted a records request to the Maricopa County Recorder's Office.

63.   The records request sought voter information and property records concerning Fernie and his wife and records concerning anyone else affiliated with the address of Fernie's property in Laveen.

64.   The documents that Michael Whiting sought were not readily accessible, for example, on the internet. Someone would need to affirmatively and specifically request them via a public-records request to access them.

10

65.    Michael Whiting's records request asked that the records be returned to Michael Whiting via email by March 15, 2024.

66.    On or around that same day, March 7, Daryl Greer—who lived and worked hours away—drove to Fernie's Laveen property.

67.    Greer surveilled the property, taking photographs of the property, of the vehicle in the driveway, and of the mailboxes where mail at the property is received.

68.    The photographs were later found on a camera-storage card in Greer's possession.

69.    Greer was acting in his capacity as lead investigator for the Apache County Attorney's Office in surveilling and photographing Fernie's Laveen property. Greer's surveillance and photographing of Fernie's Laveen property was conducted at Michael Whiting's direction. At the time, Michael Whiting was Apache County's final policymaker for the Apache County Attorney's Office because he was the County Attorney.

70.    Over the next couple of weeks, Fernie noticed strange men following him around and taking photos of him, both in Apache County and in Laveen.

71.    The two strange men were Daryl Greer and Trent Jensen.

72.    Greer and Jensen were acting in their respective capacities with the Apache County Attorney's Office—lead investigator and legal assistant—in following and taking photos of Fernie. Greer's and Jensen's following and taking photos of Fernie was at Michael Whiting's direction. At the time, Michael Whiting was Apache County's final policymaker for the Apache County Attorney's Office because he was the Apache County Attorney.

11

73.    Fernie was not used to having strangers follow him or take his picture. He began to feel anxious and uneasy, and he struggled to reconcile those feelings with simultaneous worries that he was just being paranoid or merely imagining that people were following him.

74.    That same month, a stranger came to Fernie's property in Laveen, unannounced and uninvited. Fernie was not there; Fernie's son was. The stranger, a man, was looking for Fernie. When Fernie's son explained that Fernie was not there, the man attempted to give a large bunch of documents to Fernie's son.

75.    Fernie's son did not accept the documents. Fernie's son also called Fernie, who spoke with the strange visitor and asked the man to identify himself. The man refused to identify himself and left.

76.    On information and belief, the man who attempted to give Fernie's son the documents was either Daryl Greer or Trent Jensen.

77.    The man who showed up unannounced and uninvited to Fernie's Laveen property looking for Fernie, attempted to serve Fernie's son documents, and refused to identify himself to Fernie on the phone was acting in his capacity as an employee with the Apache County Attorney's Office. He was acting at Michael Whiting's direction. At the time, Michael Whiting was Apache County's final policymaker for the Apache County Attorney's Office because he was the Apache County Attorney.

78.    Following the uninvited and unannounced visit, Fernie's son and Fernie felt that their privacy and the sanctity of their private property had been invaded. Fernie's anxiousness and uneasiness increased; he began to fear for both his own and his family's

safety. The incident so creeped out Fernie and his son that Fernie bought a new home-security system for the Laveen property.

79.    Fernie did not yet connect these odd events to his budding campaign for Superintendent of Schools, much less to Michael Whiting. He continued gathering signatures for his nomination petition and campaigning around Apache County.

80.    That is what Fernie was doing on March 17, 2024: standing in front of a church on a main thoroughfare in St. Johns, gathering signatures and publicizing his campaign.

81.    Fernie was holding a clipboard with paperwork for people to sign in support of his nomination petition when two men approached him.

82.    Fernie explained to the men who he was and what he was campaigning for, and he asked the men if they'd like to sign his petition.

83.    The men told Fernie that they knew who he was.

84.    Fernie did not know who the men were.

85.    The two men were Daryl Greer and Trent Jensen.

86.    One of the men started to reach for the clipboard, acting as if he was going to sign Fernie's petition.

87.    The other man knocked the clipboard out of Fernie's hands and pushed him in the chest, knocking him back toward the street.

88.    One of the men then told Fernie: "Michael Whiting is just getting started with you."

89.    Greer and Jensen were acting in their respective capacities with the Apache County Attorney's Office—lead investigator and legal assistant—in their March 17 physical attack on Fernie. Greer and Jensen were acting at Michael Whiting's direction. At the time, Michael Whiting was Apache County's final policymaker for the Apache County Attorney's Office because he was the Apache County Attorney.

90.    This was the first time Fernie had reason to believe that Michael Whiting or others in the Apache County Attorney's Office might be trying to intimidate him to drop out of the race.

91.    Fernie suffered myriad negative feelings after Greer and Jensen's physical attack. He felt physical pain from the clipboard being smacked out of his hand and from being violently shoved in the chest. He felt humiliation and embarrassment from being publicly degraded, especially by those in the local-government ecosystem he was trying to break into. And his anxiety and fear continued to increase, as he dreaded what Michael Whiting, with his significant political power, might do to him next.

92.    Because the men had invoked the name of the Apache County Attorney—the public prosecutor for the County—in knocking his clipboard out of his hands and pushing him, Fernie reported the intimidating actions to the Arizona Attorney General's Office.

93.    At night on March 17—the same day that Greer and Jensen physically attacked Fernie—someone (or some group of people) threw rocks at Fernie's St. Johns home.

94.    On information and belief, Greer and/or Jensen threw the rocks at Fernie's St. Johns home.

95.     On information and belief, Greer and/or Jensen acted in their respective capacities with the Apache County Attorney's Office—lead investigator and legal assistant—in throwing rocks at Fernie's St. Johns home. On information and belief, Greer and Jensen acted at Michael Whiting's direction in throwing rocks at Fernie's St. Johns home. At the time, Michael Whiting was Apache County's final policymaker for the Apache County Attorney's Office because he was the Apache County Attorney.

96.     Fernie immediately connected the rock-throwing to the physical attack earlier in the day. The attack on his home magnified his anxiety and his fear for both his own and his family members' safety. Greer and/or Jensen had, by now, encroached on both of Fernie's homes in a short span. Fernie's cousin lives directly behind Fernie's St. Johns home, Fernie's nephew lives across the street from it, and Fernie's father was set to move back into the St. Johns home for the warmer months just a few weeks later. Fernie spiraled at the thought that Michael Whiting would begin directing intimidation tactics or attacks on Fernie's family members next. He began contemplating dropping out of the race for his and his family's safety.

97.     Finally, the last act in the intimidation campaign was the sending of ominous and mysterious packages.

98.     Five days later, on March 22, two mysterious packages, each from a sender and address that Fernie did not recognize, arrived at both of Fernie's homes—in St. Johns and in Laveen.

99.     The packages frightened Fernie. Given the escalating actions he'd faced over the previous two weeks, he feared that the packages might contain arsenic or some other

harmful substance. So he did not open them and instead reported them and turned them over to the Attorney General's Office for investigation, since he'd already reported Greer and Jensen's physical attack to that office.

100.    Under the duress of this string of intimidating and harassing actions—the tailing and photographing, the physical assault in front of the church, the verbal threat, the rock-throwing, and the mysterious packages—Fernie dropped out of the race for Superintendent of Schools on March 28, 2024.

101.    In his letter to the Apache County Elections Director explaining his withdrawal, he stated that he had given "the matter careful consideration" and that his decision was "heartfelt." His withdrawal letter specifically cited "coercive tactics by Apache County Attorney Michael Whiting concerning his commitment to assure that his wife Joy Whiting remains in office," including "a recent assault which [Fernie] experienced []and reported[.]" "I *DO NOT WANT* to place myself in harm's way," his withdrawal letter advised. "My father's health, my safety and health[,] and the safety and welfare of my family have led to this unprecedented decision which I have been forced to make," he continued.

102.    Fernie then ceased campaigning or otherwise publicly speaking about his desire to become Apache County Superintendent of Schools in 2024.

103.    Fernie learned later, from the Attorney General's Office, that the packages and their contents were still more intimidation tactics and threats directed by Michael Whiting and carried out by his henchmen.

104.    The packages indicated that they were sent from "Ranch LLC." At the time, "Ranch LLC" was not a registered agency with the Corporation Commission of Arizona. The packages were also marked as being sent from P.O. Box 137 in Overgaard, Arizona. But a postal inspector confirmed that this postal address did not exist at the time the packages were sent.

105.    The contents of the two packages were materially identical. They contained an anonymous, unsigned letter addressed to Fernie along with nearly 200 pages of deeply intrusive photos and documents attached.

106.    The letter was an attempt to force Fernie from the race for Superintendent of Schools. It threatened legal action against Fernie to challenge whether Fernie was a valid candidate and attendant ruinous litigation costs. It also threatened to make intrusive subpoenas seeking personal documents from and about Fernie and his family. The sender would follow through on these threats, the letter stated, *unless* Fernie dropped out of the race by April 1, 2024. In threatening fashion and to demonstrate the breadth of the anonymous sender's knowledge of Fernie's loved ones, it identified a dozen of his family members by their first, middle, and last names along with their dates of birth.

107.    Among the nearly 200 pages of intrusive attachments were numerous photos of Fernie's home in Laveen and records about his and his family's properties. The photos, it turned out, were surveillance photos Greer had driven all the way to Laveen to take on or around March 7 and which were later found on his camera-storage card.

108.    The last document in the packet was a candidate-withdrawal form that would—if Fernie filled it out, notarized it, and sent it back to the Apache County Elections Director—end his candidacy for superintendent.

109.    Michael Whiting drafted and compiled the letter's contents and attachments or, at least, directed Greer to compile them. At Michael Whiting's direction, Greer sent the packages to Fernie. He sent them from America One Mail and Ship in Show Low, Arizona, and he used a credit card in Michael Whiting's name to pay for the shipping. In taking these actions, Greer and Michael Whiting were acting in their capacities with the Apache County Attorney's Office—lead investigator and County Attorney, respectively. At the time, Michael Whiting was Apache County's final policymaker for the Apache County Attorney's Office because he was the Apache County Attorney.

110.    The purported basis for the threatened legal action to challenge Fernie's validity as a candidate was an insinuation that Fernie was not an Apache County resident. That insinuation was false. Fernie resided in Apache County during both of his runs for Superintendent of Schools in 2016 and 2024. He has been validly registered to vote in Apache County for well over a decade—indeed, for as long as he can remember. No one had questioned Fernie's residency before, including when he ran for office in Apache County in 2016 (against an opponent who was not Joy Whiting).

111.    Even if someone—whether Michael Whiting or anyone else—held a genuine concern over Fernie's eligibility for office in Apache County, Arizona law provides a civil process for bringing eligibility challenges in court. In light of their professional experience

18

and their own use of such processes in their personal election campaigns in the past, Defendants are (and were in March 2024) well aware of that civil process.

112.    It is categorically ***not*** lawful to resolve election eligibility concerns through stalking, physical assaults, verbal threats, and extorting opponents to drop out (among other intimidation tactics), as Michael Whiting directed and Greer and Jensen carried out against Fernie throughout March 2024. Arizona's prosecution of Michael Whiting and Greer (detailed in the next section) makes that plain.

113.    On information and belief, the County Attorney's office under Michael Whiting's leadership had never taken such an interest in a candidate's eligibility concerns as Michael Whiting, Greer, and Jensen did with Fernie in 2024. Nor, certainly, had the office under Michael Whiting's leadership ever used intimidating tactics, like the stalking, physical assaults, verbal threats, and extortion employed against Fernie, in seeking to resolve election eligibility concerns. (Again, doing so would likely yield criminal charges, as it did here.) On information and belief, the County Attorney's office under Michael Whiting's leadership did not file legal challenges to any candidate's eligibility or prosecute alleged residency fraud with any regularity. Both the County Attorney's Office's legal filings under Michael Whiting's watch and Greer's civil challenge to an opposing candidate's eligibility (in a personal campaign for city council years earlier) were well-covered in the White Mountain Independent newspaper, but the newspaper's coverage does not reveal any candidate-eligibility challenges by the County Attorney's office under Michael Whiting's leadership.

114.    Against that backdrop, the string of intimidating actions Michael Whiting, Greer, and Jensen took against Fernie throughout March 2024 were clearly motivated by a desire to suppress Fernie's political activity because it challenged Joy Whiting's reelection as superintendent.

**E. The Arizona Attorney General's Office Investigates and Indicts the Whitings and Greer.**

115.    The Attorney General's Office opened an investigation into the harassment and intimidation of Fernie.

116.    The Attorney General's Office was also investigating both Michael Whiting and Joy Whiting for potential crimes involving the misuse of their offices.

117.    In June 2024, the Attorney General's Office executed a search warrant at both the Apache County Attorney's Office and the Whitings' home.

118.    The Attorney General's Office obtained and executed the search warrant in part because the Attorney General's Office, after issuing a subpoena earlier, had reason to believe that Michael Whiting had been destroying or hiding evidence pertinent to the investigation.

119.    Specifically, the Attorney General's Office believed that Michael Whiting had been using WhatsApp (an encrypted phone application) for official County business, had replaced his cell phone, and had replaced County Attorney's Office staff computers.

120.    Michael Whiting was not at the County Attorney's Office when the search warrant was executed. When his staff called him to let him know about the search, he told his chief deputy that he was nearby and would be at the office soon.

121.    But Michael Whiting never came to the office that day, and he lied about his whereabouts over the next several days. He or his attorney inconsistently told people who were present at the search that he was on pre-planned family leave or conducting meetings with the Navajo Nation elsewhere in the county. Neither story was true. His staff tried to find him using the GPS on his county-issued vehicle, but Michael Whiting had turned off the GPS.

122.    Citing the Attorney General's Office's search of the County Attorney's Office and Michael Whiting's erratic behavior during and after, all three of Michael Whiting's deputy attorneys publicly called on him to resign.

123.    In response, Michael Whiting, Greer, and Jensen engaged in retaliatory and intimidating behavior toward the deputies.

124.    Specifically, Michael Whiting, Greer, and Jensen slowly and menacingly drove past the deputies' houses and tailed them around town.

125.    All three of the deputies obtained injunctions against Michael Whiting, Greer, and Jensen, prohibiting further harassment of the deputies.

126.    The injunctions required Michael Whiting, Greer, and Jensen to stay away from the deputies' workplace—the Apache County Attorney's Office.

127.    In August 2024, a grand jury indicted Michael Whiting and Greer.

128.    The grand jury's indictment included one count against each of Michael Whiting and Greer for misdemeanor "Harassment" and one count for misdemeanor "Sending Threatening or Anonymous Letter." These were based on their conduct towards Fernie.

129.    The indictment also included three counts against Michael Whiting for felony "Misuse of Public Monies," one count for felony "Theft," one count for misdemeanor "Theft," one count for felony "Conflict of Interest," and one count for felony "Stealing, Destroying, Altering or Secreting Public Record." Greer was also indicted on two of the felony "Misuse of Public Monies" counts. The indictment alleged that Michael Whiting and Greer illegally (a) used County Attorney's Office funds to purchase shirts and bags promoting Joy Whiting's status as Superintendent of Schools and (b) used an Apache County credit card to purchase over $10,000 in gym equipment for the County Attorney's office.

130.    The indictment accused Michael Whiting, moreover, of illegally (a) stealing over $10,000 from his office's "pending forfeiture" account (where assets seized for potential forfeiture are held until a court declares whether they should be returned to the owner or forfeited to law-enforcement agencies) to help purchase cars for his office; and (b) using his personal Gmail account for official county business.

131.    The indictment also charged Joy Whiting with one count for felony "Misuse of Public Monies" and one count for felony "Conflict of Interest." The indictment alleged that Joy Whiting and Michael Whiting had illegally (a) used Superintendent of Schools office funds to purchase a new Ford Expedition (worth about $80,000) that was assigned to Michael Whiting's office and primarily used by Michael Whiting, and (b) failed to disclose to the County Board of Supervisors the conflicts of interest arising from their use of their respective office's funds for the benefit of the other (or other's office).

132.    A true and correct copy of the combined indictment against Michael Whiting, Joy Whiting, and Greer is attached to this complaint as Exhibit 1.

133.    In January 2025, Greer accepted a plea deal in which he pleaded guilty to misdemeanor "Sending Threatening or Anonymous Letter."

134.    The factual basis for Greer's guilty plea to that offense reads: "On or between March 7, 2024 and March 22, 2024, in the jurisdictions of Apache County and Maricopa County, Arizona. Defendant, Daryl Greer, while employed at the Apache County Attorney's Office, knowingly aided and assisted co-defendant, Michael Whiting, in taking photos of Fernando Madrid's Maricopa County residence and vehicle, conducted surveillance on said residence and performed general investigative background work on Fernando Madrid, with the reasonable knowledge that such information would be used by co-defendant, Michael Whiting, in part and parcel with Whiting's own investigation on Fernando Madrid, culminating into a rather lengthy threatening letter and attachments sent to Fernando Madrid in a concerted effort to deter Fernando Madrid from seeking political office in Apache County."

135.    Michael Whiting's and Joy Whiting's criminal cases remain ongoing.

136.    The chief deputy county attorney also filed a complaint against Michael Whiting with the Arizona State Bar in June 2024.

137.    In August 2024, the Apache County Board of Supervisors voted to fund Michael Whiting's defense against the bar complaint.

138.    A disciplinary judge placed Michael Whiting's bar license on interim suspension, effective November 1, 2024, and lasting at least until the criminal charges against Michael Whiting are resolved.

139.    Michael Whiting was reelected as Apache County Attorney in November 2024. No other candidate appeared on the ballot in either the primary or general election.

140.    The suspension of his law license makes him ineligible for the office, however, and he has since been replaced as County Attorney.

141.    Joy Whiting, too, was reelected as Superintendent of Schools in November 2024. No other candidate appeared on the ballot in either the primary or general election.

142.    Joy Whiting remains in office as Apache County Superintendent of Schools.

**INJURY TO PLAINTIFF**

143.    Defendants' string of intimidating, harassing, and retaliatory actions directed at Fernie throughout March 2024 directly and proximately caused severe harms to Fernie.

144.    Defendants' string of intimidating, harassing, and retaliatory actions directed at Fernie throughout March 2024 were designed to force Fernie to drop his efforts toward becoming Apache County Superintendent of Schools.

145.    Defendants' string of intimidating, harassing, and retaliatory actions directed at Fernie throughout March 2024 caused Fernie to drop his efforts toward becoming Apache County Superintendent of Schools.

146.    But for Defendants' string of intimidating, harassing, and retaliatory actions directed at Fernie throughout March 2024, Fernie would have successfully and lawfully

submitted a nomination petition to appear on the ballot as a candidate in the 2024 primary election for Apache County Superintendent of Schools.

147.    But for Defendants' string of intimidating, harassing, and retaliatory actions directed at Fernie throughout March 2024, Fernie would have continued campaigning and communicating with the public about his ideas for public education in Apache County through at least the July 2024 primary election.

148.    But for Defendants' string of intimidating, harassing, and retaliatory actions directed at Fernie throughout March 2024, Fernie would have continued exercising his core political speech rights for longer and more often.

149.    Defendants' string of intimidating, harassing, and retaliatory actions directed at Fernie throughout March 2024 chilled Fernie's core political speech.

150.    Fernie also spent significant time and resources preparing and conducting his campaign *through* March 28, 2024.

151.    Specifically, Fernie spent a significant amount of time talking with education-field stakeholders around Apache County before noticing his intent to become a candidate to ensure he would have a base of support. He spent significant time creating a platform of issues and ideas that he would run on and convey to the public whose signatures and votes he sought. He spent significant time formulating a social-media plan for his campaign. And he invested much time driving to and appearing in various places in Apache County, to inform the public of his campaign and the ideas he was running on and to seek ballot-nomination signatures.

152.    Fernie also spent a significant amount of money (in the form of gas) and resources (in the form of wear on his vehicle) driving all around Apache County to seek support from education-field stakeholders, inform the public of his campaign, and obtain signatures for his nomination petition.

153.    That is not a small matter in Apache County. Apache County contains over 11,000 square miles. It is the sixth-largest county in the contiguous United States. The drive from its northern end to its southern end traverses over 200 miles and can take about four hours. Fernie repeatedly campaigned in northern Apache County communities like Chinle, St. Michaels, and Window Rock to reach the predominantly Navajo voters there. These communities are a three- or four-hour drive—around 200 or more miles—roundtrip from Fernie's residence in St. Johns.

154.    By directly and proximately causing Fernie to cease his budding campaign, Defendants' string of intimidating, harassing, and retaliatory actions directed at Fernie throughout March 2024 ensured that the time, money, and resources Fernie had spent on his campaign through March 28, 2024, were wasted.

155.    The string of intimidating, harassing, and retaliatory actions Defendants directed at Fernie throughout March 2024 caused Fernie pain and suffering, including shame, embarrassment, humiliation, anxiety, fear, and loss of confidence in his community standing, as well as physical pain from Greer and Jensen's physical attack upon him.

156.    Specifically:

a.    Fernie was not used to having strangers follow him or take his picture. Greer's and Jensen's following Fernie and taking photos of him made him

feel anxious and uneasy. Fernie struggled to reconcile those feelings with simultaneous worries that he was just being paranoid or merely imagining that people were following him.

b.  Following the uninvited and unannounced visit to Fernie's property, Fernie's son and Fernie felt that their privacy and the sanctity of their private property had been invaded. Fernie's anxiousness and uneasiness increased; he began to fear for both his own and his family's safety. The incident so creeped out Fernie and his son that Fernie bought a new home-security system for the Laveen property.

c.  Fernie suffered myriad negative feelings after Greer and Jensen's physical attack. He felt physical pain from the clipboard being smacked out of his hand and from being shoved in the chest. He felt humiliation and embarrassment from being publicly degraded, especially by those in the local-government ecosystem he was trying to break into. And his anxiety and fear continued to increase, as he worried what Michael Whiting, with his significant political power, might do to him next.

d.  The rock-throwing attack on Fernie's home magnified his anxiety and his fear for both his own and his family members' physical safety. Greer and/or Jensen had, by now, encroached on both of Fernie's homes in a short span. Fernie's cousin lives directly behind Fernie's St. Johns home, Fernie's nephew lives across the street from it, and Fernie's father was set to move back into the St. Johns home for the warmer months just a few weeks later.

Fernie spiraled at the thought that Michael Whiting would begin directing intimidation tactics or attacks on Fernie's family members next. He began contemplating dropping out of the race for his and his family's safety.

e.   Ultimately, Fernie had to choose between two painful options: the embarrassment of having to succumb to a bully and withdraw from a race in which he'd invested substantial time and resources and been publicly asking for support, or the fear that he'd be continuing to put himself and his family in harm's way if he pressed on. Both required suffering.

157.   Even after he dropped out of the race, Fernie often remained paralyzed by fear because he knew that Michael Whiting, Greer, and Jensen remained in public office and did not know whether or when they might inflict additional harassment on him or his family. At times, Fernie's fear made it difficult for him to perform daily tasks and help to take care of his family.

158.   Fernie remains passionate about education and believes that his leadership and passion could improve education outcomes in Apache County. But Fernie still feels fear, anxiety, shame, embarrassment, humiliation, and loss of confidence in his community standing today because of the string of intimidating, harassing, and retaliatory actions Defendants directed at him throughout March 2024.

159.   Fernie remains worried that speaking out about public-education issues in Apache County or pursuing a run for Apache County Superintendent of Schools against Joy Whiting in the future will subject him to intimidating, harassing, and retaliatory actions by Defendants like those directed at him throughout March 2024. In other words, Fernie

now knows that he must weigh the benefit of exercising his First Amendment rights against the very real chance that he could be subject to government officials' intimidation, harassment, and retaliation in response to his doing so.

160. Punitive damages are justified against the individual defendants because their conduct was motivated by evil motive or intent, or it involved reckless or callous indifference to Fernie's federally protected rights.

**CAUSES OF ACTION**

**Count I**

**42 U.S.C. § 1983 – First and Fourteenth Amendments**

**Free Speech Clause claim against Michael Whiting, Greer, and Jensen individually**

161. Fernie realleges and incorporates by reference the allegations in paragraphs 1 through 160 as if fully stated herein.

162. Fernie's campaigning to become Apache County Superintendent of Schools—including his noticing his intent to become a candidate for office, his communicating to the public about his campaign and his ideas if elected to office, and his solicitation of signatures for his nomination petition—constitutes core political speech that warrants the highest protection under the First Amendment.

163. Using their respective authorities under color of state law, Michael Whiting, Greer, and Jensen subjected Fernie to the deprivation of his First Amendment rights by harassing and intimidating him to stop engaging in First Amendment-protected activity.

164. Michael Whiting, Greer, and Jensen engaged in the following harmful acts intended to and proximately causing Fernie to cease exercising his First Amendment rights:

29

a. Surveilling Fernie's property, including by taking photos of the property, the vehicle in the property's driveway, and the mailbox where mail is received at the property. (*See* ¶¶ 66-69.)

b. Repeatedly following and taking photographs of Fernie. (*See* ¶¶ 70-73.)

c. Approaching Fernie's property uninvited and unannounced, attempting to leave strange packages/documents with Fernie's son, then refusing to identify oneself. (*See* ¶¶ 74-78.)

d. Approaching Fernie while he was soliciting signatures for his nomination petition, knocking his clipboard from his hands, forcefully pushing him in the chest, then warning, "Michael Whiting is just getting started with you." (*See* ¶¶ 80-92.)

e. Throwing rocks at Fernie's home. (*See* ¶¶ 93-96.)

f. Sending threatening, anonymous letters to Fernie's homes, from a fictitious sender and address, attempting to force Fernie to drop his political campaign; threatening Fernie with legal action, including ominous threats to expose his and his family's personal information and documents to view and ominous insinuations that the sender had been investigating Fernie's extended family (by using their middle names and dates of birth in the letter). (*See* ¶¶ 97-109.)

165.    Michael Whiting personally articulated a goal to Greer and Jensen, who were his direct subordinates in the County Attorney's Office, that they get Fernie to drop his campaign for Superintendent of Schools that challenged Michael Whiting's wife, Joy Whiting.

166. Michael Whiting personally directed, or was at least aware of and ratified, each of the acts described in paragraph 164.

167. Michael Whiting understood and intended that those acts would intimidate Fernie into dropping his campaign for Superintendent of Schools.

168. Greer personally participated in each of the acts described in paragraph 164.

169. Greer understood and intended that those acts would intimidate Fernie into dropping his campaign for Superintendent of Schools.

170. On information and belief, Jensen personally participated in each of the acts described in paragraph 164, or at least personally participated in the acts described in paragraphs 164.b and 164.d.

171. Jensen understood and intended that those acts would intimidate Fernie into dropping his campaign for Superintendent of Schools.

172. The intimidating acts described in paragraph 164 were plainly outside of Michael Whiting's, Greer's, and Jensen's legitimate authority as members of the Apache County Attorney's Office.

173. Explicit efforts to chill a person's First Amendment-protected expression were plainly outside of Michael Whiting's, Greer's, and Jensen's legitimate authority as members of the Apache County Attorney's Office.

174. In their actions seeking to intimidate Fernie into dropping his campaign for Superintendent, Michael Whiting, Greer, and Jensen proceeded outside of the ordinary investigative, prosecutorial, and judicial process expected of their office. Indeed, they acted criminally, as Greer's guilty plea demonstrates.

31

175.    Through the acts described in paragraph 164, Michael Whiting, Greer, and Jensen chilled Fernie's First Amendment-protected expression, and Fernie's choice to self-censor was an objectively reasonable one under the circumstances.

176.    But for the acts described in paragraph 164, Fernie would have continued with his campaign and related First Amendment-protected activity through at least the primary election several months later.

177.    Michael Whiting's, Greer's, and Jensen's actions under color of state law were also unconstitutional First Amendment retaliation because they exercised official authority in retaliation for Fernie's exercise of his First Amendment rights.

178.    Michael Whiting personally articulated a goal to Greer and Jensen, who were his direct subordinates in the County Attorney's Office, that they retaliate against Fernie for seeking election as Superintendent of Schools and challenging Michael Whiting's wife, Joy Whiting.

179.    Michael Whiting, Greer, and Jensen engaged in the harmful acts against Fernie described in paragraph 164 because they were motivated to punish and intimidate Fernie for exercising his First Amendment right to run against Joy Whiting for Superintendent of Schools.

180.    Michael Whiting, Greer, and Jensen understood and intended that the acts described in paragraph 164 would retaliate against Fernie for exercising his First Amendment right to run against Joy Whiting for Superintendent.

181.    Any purported concern over Fernie's residency or eligibility for office was, at best, a pretext for Michael Whiting, Greer, and Jensen's real motivation: to retaliate

against Fernie for exercising his First Amendment right to run against Joy Whiting for Superintendent. Their unorthodox (and illegal) actions, the fact that no one raised any concern over Fernie's residency or eligibility until he was running against Joy Whiting, and the (on information and belief) lack of any similar prior interest in candidate-eligibility challenges (much less with this level of illegality and aggression) by the County Attorney's Office under Michael Whiting's leadership all make that clear. (*See* ¶¶ 110-114.)

182.   Had Fernie not engaged in the First Amendment-protected act of seeking election against Joy Whiting, Michael Whiting, Greer, and Jensen would not have engaged in the acts described in paragraph 164.

183.   Retaliating against a person because of their First Amendment-protected expression was plainly outside of Michael Whiting's, Greer's, and Jensen's legitimate powers.

184.   As a result of the retaliatory acts described in paragraph 164, Michael Whiting, Greer, and Jensen chilled Fernie's First Amendment-protected expression, and Fernie's choice to self-censor in response to those acts was an objectively reasonable one under the circumstances.

185.   But for the retaliatory acts described in paragraph 164, Fernie would have continued his campaign and related First Amendment-protected activity through at least the primary election several months later.

**Count II**

**42 U.S.C. § 1983 – First and Fourteenth Amendments**

**Free Speech Clause claim against Apache County, the Apache County Attorney's Office, and Michael Whiting in his (former) official capacity as Apache County Attorney (collectively, Apache County)**

186.    Fernie realleges and incorporates by reference the allegations in paragraphs 1 through 185 as if fully stated herein.

187.    Apache County is liable for violation(s) of Fernie's First Amendment rights described in Count I.

188.    The Apache County Attorney (and the County Attorney's Office) acts on behalf of Apache County, rather than the State of Arizona, at least when acting in a capacity other than prosecuting crimes for the State.

    a.  The Apache County Attorney enforces the law within Apache County's borders on behalf of Apache County.

    b.  The Apache County Attorney acts as a legal advisor to the County Board of Supervisors.

    c.  The Apache County Attorney is elected by Apache County's voters; is defined by statute as a county officer; and is required to reside within Apache County's borders.

    d.  The County Board of Supervisors must consent to the County Attorney's appointment of deputies and other assistants and staff members. The State of

Arizona plays no role in the County Attorney's appointment of deputies and other assistants and staff members.

    e.  Apache County pays its County Attorney a salary out of the county treasury, just as the salaries of other county employees are paid. Similarly, Apache County pays for the County Attorney's offices, equipment, supplies, and all expenses incident to the County Attorney's enforcement of law throughout the County.

    f.  On information and belief, Apache County has a policy of indemnifying Apache County Attorney's Office officers and employees when those employees are accused of misdeeds in their office or employment.

189.   Michael Whiting was (and Greer and Jensen were) acting on behalf of Apache County, and not the State of Arizona, in directing and carrying out the string of intimidating, harassing, and retaliatory actions against Fernie throughout March 2024 described in paragraph 164.

    a.  Michael Whiting appointed Greer and Jensen to their roles with the Apache County Attorney's Office.

    b.  The Apache County Board of Supervisors consented to Michael Whiting's appointment of Greer and Jensen to those roles.

    c.  The State of Arizona had nothing to do with either Michael Whiting's appointments of Greer or Jensen nor the Board of Supervisors' consent to those appointments.

    d.  Michael Whiting, Greer, and Jensen were each paid a salary by Apache County, not by the State. The Board of Supervisors fixed each of their respective salaries.

    e.  On information and belief, Michael Whiting, Greer, and Jensen used funds and equipment provided to the Apache County Attorney's Office by the County Board of Supervisors to carry out the string of intimidating, harassing, and retaliatory acts against Fernie detailed in paragraph 164, including the use of County-issued vehicles to get to the locations needed to carry out those acts and County funds to fuel those vehicles.

    f.  The Apache County Board of Supervisors voted to fund Michael Whiting's defense of the bar complaint filed against him in 2024, which stemmed at least in part from allegations concerning Michael Whiting's activities in his County Attorney office.

190.   The Apache County Attorney is the final policymaker for Apache County concerning the County Attorney's Office and the Office's activities.

    a.  The County Attorney is not chosen by the County Board of Supervisors but elected by Apache County's voters independently.

    b.  The County Board of Supervisors does not have disciplinary authority over the County Attorney. They cannot suspend or remove the County Attorney from office.

c. The County Attorney's powers and duties are generally not subject to the direction of the Board of Supervisors. As far as the County Board of Supervisors supervises the County Attorney, it is for fiscal matters alone.

d. The County Board of Supervisors' authority over the County Attorney's Office's staff is very limited: The Board of Supervisors only has power to consent to appointments made by the County Attorney and to fix the appointee's salary. The Board of Supervisors lacks power to appoint staff to the County Attorney's office itself or to discipline or suspend the County Attorney's staff.

191.    Michael Whiting was Apache County's final policymaker for the Apache County Attorney's Office in March 2024 (and, indeed, during his entire tenure as Apache County Attorney).

192.    As a final policymaker, and through two County Attorney's Office employees (Greer and Jensen), Michael Whiting authorized and directed the string of intimidating, harassing, and retaliatory actions directed at Fernie throughout March 2024 detailed in paragraph 164.

193.    Because they were conducted at the direction of a final policymaker, the string of intimidating, harassing, and retaliatory actions directed at Fernie throughout March 2024, as described in paragraph 164, represented an official policy, practice, or custom of Apache County.

194.    Additionally, Apache County ratified Michael Whiting's authorization and direction—and Greer's and Jensen's carrying out—of the string of intimidating, harassing,

37

and retaliatory actions directed at Fernie throughout March 2024, as described in paragraph 164.

    a.  The County Board of Supervisors consented to Michael Whiting's appointment of Greer and Jensen to the roles "lead investigator" and "legal assistant" despite their not having the training traditionally associated with such positions.

    b.  The County Board of Supervisors voted to fund Michael Whiting's defense of the bar complaint filed against him in 2024, which stemmed at least in part from allegations concerning Michael Whiting's actions against Fernie throughout March 2024. They did so despite knowing the details of the indictment secured against Michael Whiting and with knowledge that all of the county's deputy attorneys had called on Michael Whiting to resign.

    c.  On information and belief, Michael Whiting, Greer, and Jensen used funds and equipment provided to the Apache County Attorney's Office by the County Board of Supervisors in carrying out the actions against Fernie, including the use of County-issued vehicles to get to the locations needed to carry out those acts and County funds to fuel those vehicles. As far as the County Board of Supervisors by law exercises supervision over the County Attorney's powers and duties, it is with respect to the County Attorney's use of public funds.

d.  The actions described in paragraph 164 were part of a deliberate, ongoing, and pervasive plan that lasted for weeks—rather than being, for instance, an on-the-spot, standalone action.

195.    Because the Board of Supervisors ratified the string of intimidating, harassing, and retaliatory actions directed at Fernie throughout March 2024, as described in paragraph 164, those actions represented an official policy, practice, or custom of Apache County.

196.    Apache County thus enacted an official policy intending to intimidate Fernie into stopping his exercise of his First Amendment rights, and proximately causing him to do so, as further elaborated in Count I.

197.    As a result of Apache County's official policy of intimidating Fernie into stopping his exercise of his First Amendment-protected expression, the County chilled Fernie's First Amendment-protected expression. His choice to self-censor was an objectively reasonable one under the circumstances.

198.    But for the County's official policy of intimidating Fernie into stopping his exercise of his First Amendment-protected expression, Fernie would have continued with his campaign and related First Amendment-protected activity through at least the primary election several months later.

199.    Apache County thus also enacted an official policy of retaliating against Fernie for his exercise of his First Amendment right to run against the incumbent Superintendent of Schools, as further elaborated in Count I.

200.    As a result of the County's official policy of retaliating against Fernie for his exercise of his First Amendment right to run against the incumbent Superintendent of Schools, the County chilled Fernie's First Amendment-protected expression, and his choice to self-censor was an objectively reasonable one under the circumstances.

201.    But for the County's official policy of retaliating against Fernie for his exercise of his First Amendment right to run against the incumbent Superintendent of Schools, Fernie would have continued with his campaign and related First Amendment-protected activity through at least the primary election several months later.

**Count III**

**42 U.S.C. § 1983 – Fourteenth Amendment**

**Equal Protection Clause selective-treatment claim against all defendants**

202.    Fernie re-alleges and incorporates by reference the allegations in Paragraphs 1 through 201 of this complaint as if fully stated herein.

203.    The Defendants violated the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution by singling Fernie out for adverse government action based on his First Amendment-protected activity, namely engaging in a political campaign for Superintendent of Schools.

204.    As further elaborated above in Count I and elsewhere in this complaint, Defendants' motivation in their directing and conducting their string of intimidating, harassing, and retaliatory actions against Fernie (detailed in paragraph 164) was to stop Fernie from campaigning against Michael Whiting's wife, the incumbent Superintendent of Schools, and to retaliate against Fernie for so campaigning.

40

205.    As further elaborated above in Count I and elsewhere in this complaint, Fernie's bid to challenge Joy Whiting is First Amendment-protected expression.

206.    As further elaborated above in Count I and elsewhere in this complaint, Defendants would not have subjected Fernie to the string of intimidating, harassing, and retaliatory actions detailed in paragraph 164 if he had not been engaging in core political speech by running for office.

207.    Politically motivated retaliatory animus is not a legitimate government interest.

208.    Defendants lacked a legitimate government interest to single out Fernie for the intimidating, harassing, and retaliatory actions that they subjected him to throughout March 2024.

209.    As elaborated in Count II and elsewhere in this complaint, the retaliatory animus directed at Fernie throughout March 2024 represented an official policy, practice, or custom of Apache County. That is because the actions reflecting Defendants' retaliatory animus were directed by a final policymaker for Apache County and/or because the County Board of Supervisors ratified them.

210.    Thus, insofar as the individual defendants' retaliatory animus directed at Fernie throughout March 2024 violated the Fourteenth Amendment's Equal Protection Clause, Apache County is liable for that violation.

### REQUEST FOR RELIEF

Wherefore, Plaintiff Fernie Madrid requests relief as follows:

A.    For a judgment declaring that Defendants' actions toward Plaintiff throughout March 2024 designed to induce him to drop his campaign for Superintendent of Schools—specifically, the acts detailed in paragraph 164 of this complaint—violated the First and Fourteenth Amendments;

B.    For an award of compensatory damages against all Defendants and punitive money damages against the individual defendants, in an amount to be proven at trial, for Defendants' violation of Plaintiff's constitutional rights alleged herein, including compensatory damages for the injuries identified in paragraphs 150-159 of this complaint;

C.    For an award of $1 in nominal damages based on Defendants' violation of Plaintiff's constitutional rights;

D.    For an award of reasonable attorneys' fees and costs; and

E.    Such other legal or equitable relief that this Court deems appropriate.

### JURY DEMAND

Plaintiff demands a trial by jury on all issues triable under Federal Rule of Civil Procedure 38.

DATED this 24th day of February 2026.

/s/ Paul V. Avelar
**Paul V. Avelar**
AZ Bar No. 023078
INSTITUTE FOR JUSTICE
3200 N. Central Avenue, Suite 2160
Phoenix, AZ 85012
Tel: (703) 557-8300
Email: pavelar@ij.org

**Michael Greenberg***
DC Bar No. 1723725
**Benjamin A. Field***
NY Bar No. 5430129;
DC Bar No. 1046902
**McCarley Maddock***
SC Bar No. 106372
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, VA 22203
Tel: (703) 682-9320
Email: mgreenberg@ij.org;
bfield@ij.org; mmaddock@ij.org

*Attorneys for Plaintiff Madrid*
*Motions for Admission *Pro Hac Vice*
    to be filed