Kathleen L. Wieneke, Bar #011139
Laura Van Buren, Bar #031669
Suzanne Reed, Bar # 025707
WIENEKE LAW GROUP, PLC
1225 West Washington Street, Suite 313
Tempe, Arizona 85288
Telephone: (602) 715-1868
Fax: (602) 455-1109
Email: kwieneke@wienekelawgroup.com
Email: lvanburen@wienekelawgroup.com
Email: sreed@wienekelawgroup.com

*Attorneys for Defendants Apache County and
Apache County Attorney's Office*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Fernando Madrid, | NO. 3:26-cv-08036-SMB |
| Plaintiff, | **DEFENDANTS APACHE COUNTY AND APACHE COUNTY ATTORNEY'S OFFICE'S REPLY IN SUPPORT OF MOTION TO DISMISS** |
| v. | |
| Michael Whiting, individually and in his official capacity as Apache County Attorney; Daryl Greer; Trent Jensen; Apache County, Arizona; Apache County Attorney's Office, | |
| Defendants. | |

Plaintiff's Response does not cure the fundamental defect identified in Defendants' Motion to Dismiss. Despite pages of argument and case citations, Plaintiff never alleges—because he cannot—that any official County action, policy, or authorized function caused his alleged injuries. Instead, Plaintiff again asks the Court to treat alleged personal, clandestine, and concededly unauthorized misconduct as "County policy" solely because it is attributed to an elected official. That request conflicts directly with *Monell* and every case Plaintiff cites. Accordingly, the claims against Apache County and the Apache County Attorney's Office must be dismissed.

///

///

///

I. **PLAINTIFF FAILS TO PLAUSIBLY ALLEGE COUNTY LIABILITY UNDER *MONELL***

Plaintiff attempts to deflect from the County's Motion by asserting that the County claims "it should enjoy immunity so long as its unconstitutional actions attack just a single individual" and "its county attorney's actions were so bad that they should not be imputed to the County." (Resp. at 2). He further contends that the County seeks an "exception to *Monell* liability for acts that are too unconstitutional." (*Id*.) These statements mischaracterize the Motion to Dismiss and obscure the dispositive issue. The County does not contend that unconstitutional conduct is categorically immune from County liability or requires more than one individual effected. Rather, it argues that Plaintiff's liability claims fail here because they rest on a fundamental misunderstanding of *Monell* and government liability—specifically, an erroneous understanding that private actions and misconduct can be deemed to be official government policy, custom, or decision.

A. **Plaintiff's Own Authorities Confirm Why His Claims Fail**

Plaintiff's own authorities confirm the opposite of what he claims: they impose government liability only for conduct taken pursuant to an official policy or within a legally defined policymaking function. None supports imputing County liability for the private, clandestine, and concededly unauthorized acts Plaintiff alleges—personal surveillance, anonymous threats, vandalism, and physical harassment.

*Lozman v. City of Riviera Beach*, 585 U.S. 87 (2018), underscores the point. There, the challenged conduct arose from formal actions of a municipal policymaking body during official proceedings. *Id*. at 91-92. There was evidence that the City Council agreed upon a plan for the City to use its resources to "intimidate" Lozman and others who had filed lawsuits against the City, which ultimate resulted in Lozman's arrest. *Id*. at 91. The only issue that Lozman challenged was the lawfulness of his arrest; he argued that his arrest was ordered in retaliation for his earlier, protected speech, which was his open-meetings lawsuit and his prior public criticisms of city officials. *Id*. at 95. The issue the Court considered was whether the existence of probable cause bars his First Amendment retaliation claim. *Id*. In

2

reaching its decision, the Court assumed that the arrest was taken pursuant to an official city policy, but whether there was such a policy and what its content may have been were issues not decided. *Id*. *Lozman*, therefore, provides no support for imputing liability to Apache County.

Plaintiff's reliance on *City of Oklahoma City v. Tuttle*, 471 U.S. 808 (1985) (plurality), fares no better. *Tuttle* addressed whether a single, on-duty use of force by a police officer could establish municipal liability through an alleged failure-to-train policy. *Id*. at 810-811, 820. The Supreme Court rejected that theory absent proof that municipal policymakers made a conscious, deliberate choice resulting in the constitutional violation, emphasizing that *Monell* exists to prevent liability where no wrongdoing can be attributed to municipal decisionmakers. *Id*. at 821. The Court warned that otherwise "some municipal 'policy' can be identified behind almost any [] harm," rendering *Monell* meaningless. *Id*. at 823. Plaintiff's theory here commits exactly that error—attempting to infer County policy from isolated, allegedly criminal acts with no plausible link to any policy choice or authorized function.

*Scanlon v. Cnty. of Los Angeles*, 92 F.4th 781 (9th Cir. 2024), also undermines, rather than supports, Plaintiff's position. *Scanlon* involved formal child-removal proceedings carried out pursuant to an express written policy articulated in official documents. The Ninth Circuit's analysis turned on a concrete, facial policy adopted and implemented by the agency. Plaintiff identifies no comparable policy, practice, or written directive here—only alleged misconduct untethered from any County process.

*Yarnell*, *Altamirano*, and *Briggs* likewise concern official prosecutorial decisions, such as whether to continue a prosecution or withhold evidence. These cases stand for the unremarkable proposition that a municipality may be liable when a final policymaker acts within a domain the law assigns to him. Plaintiff never explains how stalking a spouse's political rival, throwing rocks at a home, or sending anonymous threats fits within any statutory duty of an Arizona county attorney.

3

*Yarnell* held the municipality potentially liable because the prosecutor, acting within his prosecutorial authority, made an official decision that directly caused the injury. *City of Phoenix v. Yarnell*, 184 Ariz. 310 (1995) (discussing liability based on the prosecutor having the sole discretion to determine whether to continue prosecution). Indeed, *Altamirano* is directly analogous—and fatal—to Plaintiff's claims. *Altamirano v. Pima*, 2016 U.S. Dist. LEXIS 202915, 2016 WL 11720201 (D. Ariz. Mar. 1, 2016).[1] There, the district court dismissed municipal liability claims because the plaintiff merely asserted that individuals with decision-making authority caused his injuries, without identifying any specific policy or factual nexus between policymaking authority and the alleged constitutional violation. *Id*. at *11-12. That is precisely the flaw here.

Plaintiff's attempt to rely on *Botello* is equally misplaced. *Botello v. Gammick*, 413 F.3d 971 (9th Cir. 2005). *Botello* involved retaliatory actions of County prosecutors against a County investigator. Regarding whether the County was liable for the County Attorney's decision to not prosecute the investigator's cases, the Court cited to Nevada law that stated, "principal district attorneys are final policymakers for the municipality with respect to the conduct of criminal prosecutions" and found the County attorney was a policymaker for the County when he decided to not prosecute the investigator's cases. *Id*. at 978.

Finally, *Whitson* highlights the dispositive distinction Plaintiff cannot overcome. *Whitson v. Bd. of Cnty. Comm'rs of the Cnty. of Sedgwick*, 106 F.4th 1063 (10th Cir. 2024). There, the sheriff's sexual misconduct occurred during the performance of official custodial duties, and state law expressly vested the sheriff with policymaking authority over prisoner care and transport. The Tenth Circuit stressed that liability attaches only when the policymaker is specifically charged by law with regulating the activity at issue. *Id*. at 1065-70. Plaintiff identifies no Arizona statute authorizing—or even remotely relating to—the alleged conduct here. As *Whitson* itself cautioned, cases are distinguishable where the

---

[1] Plaintiff cited to *Altamirano v. County of Pima*, No. 15-cv-169, 2017 WL 11589192, at *3 (D. Ariz. Feb. 6, 2017). Plaintiff Altamirano has brought multiple lawsuits against Pima but none of the cases have that February 2017 publishing date.

official "was not specifically charged with regulating (and setting policy for) the activity on which the claim was based." *Id*. at 1070. This case falls squarely into that category.

In short, Plaintiff's authorities require what he lacks: official action, a legally defined policymaking function, and a direct attribution of conduct to County policy. Because Plaintiff alleges none of these, his cited cases do not defeat dismissal—they confirm it.

### B. Final Policymaking Authority Is Function-Specific and Does Not Encompass the Alleged Conduct

Plaintiff's Response rests on the assertion that county attorneys are "final policymakers." (Resp. at 6–9). That general proposition does not resolve the dispositive inquiry here. The dispositive question is whether Whiting was legally authorized to establish policy in the area implicated by the alleged conduct. *See Fiorenzo v. Nolan*, 965 F.2d 348, 351 (7th Cir. 1992) ("[A] municipality is not liable merely because the official who inflicted the alleged constitutional injury had the discretion to act on its behalf; rather, the official in question must possess final authority to establish municipal policy with respect to the challenged action"); *see Collins v. City of San Diego*, 841 F.2d 337, 341 (9th Cir. 1988) ("liability attaches only when the decisionmaker possesses 'final authority' to establish municipal policy with respect to the action ordered.").

Plaintiff identifies no Arizona statute or County function authorizing stalking, threats, vandalism, or physical harassment of a private citizen. Nor does he explain how any alleged conduct derives from A.R.S. § 11-532. Because the alleged acts fall entirely outside any delegated policymaking function, Whiting was not acting as a final County policymaker when he pressured Plaintiff into dropping out of political race against Whiting's wife.

Unable to identify any delegated policy authority, Plaintiff resorts to conclusory labels, asserting that Whiting "maintained final control" and therefore must have been "policy making" when he allegedly directed two subordinates to harass, stalk, and intimidate Plaintiff. (Resp. at 7–8.) Labeling misconduct as "policy making" does not make it so. Only well-pleaded facts are given a presumption of truth. *See Ashcroft v. Iqbal*, 556 U.S. 622, 679 (2009). Conclusory allegations—allegations that "simply recite the elements

5

of a cause of action" without supplying underlying facts to support those elements—are not "entitled to the presumption of truth." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

### C. Plaintiff's Ratification Theory Remains Legally Defective

Plaintiff expressly acknowledges that his ratification theory rises or falls on a single allegation: the Board of Supervisors authorized County funds to defend Whiting in a State Bar disciplinary matter. (Resp. at 4–6, 9, 13–15; *see also* id. at 15 n.2). That allegation is legally insufficient to establish *Monell* liability. Ratification demands far more than awareness of allegations or the routine provision of a legal defense. It requires a deliberate, affirmative decision by a final policymaker to approve the unconstitutional conduct itself.

Ratification exists only where the policymaker knows of the constitutional violation and "actually approve[s] of it." *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004). Plaintiff pleads no such facts. He does not allege that the Board was aware that Whiting's conduct was unconstitutional, endorsed it, or adopted it as County policy. Instead, he alleges only that the Board funded a defense while accusations were unresolved—conduct that is routine, neutral, and legally meaningless for *Monell* purposes.

Mere knowledge of allegations is not the "conscious, affirmative choice" required for ratification. *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999) (knowledge alone is insufficient); *Clouthier v. County of Santa Clara*, 591 F.3d 1232, 1250 (9th Cir. 2010) (ratification requires affirmative approval of the conduct). Nor can Plaintiff bridge this gap by pointing to criminal charges or disciplinary proceedings, which are allegations—not adjudicated findings—and therefore prove nothing about the existence of unconstitutional conduct, much less County approval of it. Notably, Plaintiff does not identify a single charge in either proceeding that even alleges a constitutional violation.

Stripped of labels, Plaintiff's ratification theory rests on nothing more than the County's refusal to prejudge accusations. That is not ratification; it is due process. Because Plaintiff pleads no facts showing that the Board knowingly and affirmatively approved unconstitutional conduct, his ratification theory fails as a matter of law.

**II.    THE APACHE COUNTY ATTORNEY'S OFFICE IS NOT A JURAL ENTITY**

Plaintiff effectively concedes that the Apache County Attorney's Office lacks capacity to be sued and asserts that naming Michael Whiting in his "official" capacity somehow preserves claims against whatever governmental entity he represents. (*See* Resp. at 6, 16–17). Naming an official in his "official capacity" does not revive claims against a non-jural department. Dismissal of the County Attorney's Office is required and appropriately narrows the case to any properly pleaded claims—which remain absent here.

**III.    CONCLUSION**

Plaintiff's Response confirms the fatal flaw in his Complaint: he alleges personal misconduct, not government action. *Monell* does not permit County liability based on alleged personal wrongdoing divorced from any authorized function, official decision, or County policy. Because Plaintiff still fails to plead that essential element—and cannot do so—the claims against Apache County and the Apache County Attorney's Office should be dismissed with prejudice.

DATED this 27th day of April, 2026.

WIENEKE LAW GROUP, PLC

By:    */s/ Suzanne Reed*
Kathleen L. Wieneke
Laura Van Buren
Suzanne Reed
1225 West Washington Street, Suite 313
Tempe, Arizona 85288
*Attorneys for Defendants Apache County and
Apache County Attorney's Office*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 27, 2026, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Paul V. Avelar
INSTITUTE FOR JUSTICE
3200 N. Central Ave., Ste. 2160
Phoenix, AZ 85012-1114

Michael Greenberg, *Pro Hac Vice*
Benjamin A. Field, *Pro Hac Vice*
McCarley Maddock, *Pro Hac Vice*
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Ste. 900
Arlington, VA 22203-1854

*Attorneys for Plaintiff*

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

Daryl Greer                          Michael Whiting
2630 S. Highway 180                  PO Box 1788
St. Johns, AZ 85936                  St. Johns, AZ 85936
*Pro Se*                             *Pro Se*

By:    */s/ Lauren Rasmussen*

8